United States District Court
Southern District of Texas
**ENTERED**
April 11, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JETHRO COOPER, §<br>INDIVIDUALLY AND ON BEHALF OF ALL §<br>OTHERS SIMILARLY SITUATED, §<br>*Plaintiffs*, §<br>§<br>v. §<br>§<br>TERMINIX INTERNATIONAL COMPANY, §<br>AND TERMINIX INTERNATIONAL, INC., §<br>*Defendants*. § | CIVIL ACTION NO. 4:17-CV-3671 |

## MEMORANDUM AND RECOMMENDATION

This dispute is before the court on Defendants' Motion to Dismiss and Compel Arbitration (Dkt. 14).[1] The court recommends that the motion be granted in full as to Plaintiff Cooper, and that the Motion to Dismiss be granted without prejudice as to the individuals who filed consents to opt-in as plaintiffs.

### I. Background

Terminix[2] has employed Cooper as a pest control technician since 2003. On December 4, 2017, Cooper filed this action against Terminix under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (FLSA) seeking unpaid overtime on behalf of himself and all others similarly situated. An order for conditional certification of a collective action has not been entered, but several individuals have filed consent forms to join this action as plaintiffs. *See* Dkts. 4-11, 26.

Terminix seeks to compel Cooper to arbitrate his FLSA claims and to dismiss this case. Cooper contends that the arbitration agreement he signed is unenforceable, and that even if he

---

[1] The district court referred this matter to this magistrate court for report and recommendation (Dkt. 16).
[2] "Terminix" refers to Terminix International Company, LP and Terminix International, Inc. Both are indirect subsidiaries of The ServiceMaster Company, LLC.

must arbitrate, the claims of individuals who have filed consents to join this action should not be dismissed.

II.     **Legal Standards For Motion to Compel Arbitration**

Courts conduct a two-part inquiry when deciding whether parties should be compelled to arbitrate a dispute. First, the court must determine whether the parties agreed to arbitrate, and next the court must determine whether any federal statute or policy prohibits arbitration. *OPE Int'l LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445 (5th Cir. 2001). In deciding the first inquiry, *i.e.*, whether the parties have agreed to arbitrate the dispute, the court must determine (1) whether there is a valid arbitration agreement, and (2) whether the specific dispute in question falls within the scope of that agreement. *Id.* The first determination, whether a valid agreement exists, is made on the basis of "ordinary state law principles that govern the formation of contracts." *Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008). The second determination, the scope of the arbitration clause, is made in accordance with the strong presumption in favor of arbitration, and doubts must be resolved in favor of arbitration. *Pennzoil Exploration and Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1068 (5th Cir. 1998); *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983).

The court has no discretion to deny arbitration of claims that are subject to a valid arbitration provision. *Bhatia v. Johnson*, 818 F.2d 418, 421 (5th Cir. 1987). If all claims asserted in a case are subject to arbitration, dismissal is the proper remedy, not a stay pending arbitration. *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992); *Ruiz v. Donahoe*, 784 F.3d 247, 249-50 (5th Cir. 2015).

III.    **Analysis**

   A. **Defendant's motion to compel arbitration and dismiss Cooper's Claims**

2

Cooper contends that the arbitration agreement is invalid because it is illusory. He further argues that it is invalid because it infringes his substantive FLSA rights. Because there is a strong federal policy in favor of arbitration, a party seeking to invalidate an arbitration agreement, here Cooper, bears the burden to establish invalidity. *Carter v. Countrywide Credit Indus.*, 362 F.3d 294, 297 (5th Cir. 2004).

### 1. The parties agreed to arbitrate

#### a. There is a valid arbitration agreement

Cooper and Terminix have entered two agreements relating to Cooper's employment, a 2014 Compensation Plan Summary signed February 19, 2014, and a 2012 We Listen Dispute Resolution Plan (We Listen Plan) signed November 15, 2011. Although the Compensation Plan is contingent on an employee signing the We Listen Plan, the arbitration agreement Terminix seeks to enforce is contained in the latter.[3]

The We Listen Plan contains the following provision:

> I HEREBY WAIVE MY RIGHT TO A COURT OR JURY TRIAL AND AGREE THAT THE PLAN IS THE EXCLUSIVE REMEDY THE COMPANY AND I HAVE FOR RESOLUTION OF DISPUTES. Accordingly, I may not pursue relief for any Dispute in any federal or state court of law except as stated

---

[3] The February 2014 Compensation Plan Summary contains the following provision:

> Participation in this compensation plan is contingent on your agreement to utilize ServiceMaster's We Listen Dispute Resolution Plan ("We Listen") in effect. We Listen provides a mechanism to resolve any and all work-related disputes/concerns and includes mediation and, if necessary, binding arbitration as the exclusive remedy, which means that covered disputes, including common law and statutory employment and wage and hour claims are decided by an arbitrator – and not a judge or jury. As a condition of your participation in this compensation plan, you agree to abide by the We Listen Dispute Resolution Program, including without limitation the arbitration provision and waiver of class or collective actions. A copy of the We Listen Dispute Resolution Plan is available from your manager or HR representative and available online at http://www.eyeoservicemaster.com/compay-resource/ethics-and-conduct/we-listen/ and the myHR website.

Dkt. 14-3 at 6. By signing the agreement, Cooper confirmed that he had read the Compensation Plan, and had been given the opportunity to discuss it with a supervisor and ask questions about it. *Id.*

3

>in the Plan. If I do file a claim in any federal or state court, the Company may seek a stay or dismissal of the claim and compel arbitration and the dispute resolution steps under the Plan. I UNDERSTAND AND AGREE THAT MY SOLE AND FINAL LEGAL REMEDY IS BINDING ARBITRATION. The only exception is that either party may seek an injunction is a court if interim and/or immediate relief is necessary to preserve the status quo or the meaningfulness of the arbitration process pending the outcome in arbitration, to the extent allowable under federal or state law.

Dkt. 19-2 at ¶ 8 (emphasis in original).

### i. The arbitration agreement is not illusory

In this case, the issue of whether a valid arbitration agreement exists is governed by Tennessee law. Dkt. 19-2 at ¶ 13 ("... this Plan shall be construed, interpreted, and its validity and enforceability determined, strictly in accordance with the Federal Arbitration Act ... and the laws of the State of Tennessee"). The Tennessee Supreme Court defines a contract "as an agreement upon sufficient consideration to do or not do a particular thing." *Green v. Justice*, No. 03A01-9512-CV-00445, 1996 WL 323689, at *2 (Tenn. Ct. App. June 13, 1996) (citing *Smith v. Pickwick Elec. Co-op.* 367 S.W.2d 775, 780 (Tenn. 1963)); *see also Moody Realty Co. v. Huestis*, 237 S.W.3d 666, 674 (Tenn. Ct. App. 2007) ("A contract 'must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced.'" (quoting *Staubach Retail Servs.-Southeast, LLC v. H.G. Hill Realty Co.*, 160 S.W.3d 521, 524 (Tenn.2005))).

Under Tennessee law, "mutual promises to be bound under an arbitration agreement can constitute adequate consideration." *Walker v. Ryan's Family Steak Houses, Inc.*, 289 F. Supp. 2d 916, 929 (M.D. Tenn. 2003). "One way in which a promise may fail to create a legally binding obligation is by being illusory—essentially promising nothing at all, or allowing the promisor to decide whether or not to perform the promised act." *Id.*; *see also Morrison v. Amway Corp.*, 517

4

F.3d 248, 257 (5th Cir. 2008) (arbitration agreement at issue was illusory under Texas law because Amway was able to unilaterally renege on its promise to arbitrate even in the context of disputes already underway). However, an arbitration agreement that is based on truly mutual promises, *i.e.*, that does not allow the employer to unilaterally change or terminate the agreement, is enforceable. *See Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012).

Cooper contends that the arbitration agreement is illusory because he is an at-will employee and thus Terminix can avoid its promise by terminating his employment at any time. This argument is not supported by the language of the agreement. While the Compensation Plan is subject to unilateral termination,[4] the We Listen Plan provides:

> I agree that this Plan document constitutes the complete agreement between the parties regarding the resolution of Disputes and supersedes any other previous versions to which I have agreed. The Plan shall survive the termination of my employment and the expiration of any benefit. No party is relying on any representations, oral or written, on the subject of the effect, enforceability, or meaning of this Plan, except as specifically set forth in this document. If there is a pre-existing dispute resolution agreement between me and the Company, this Plan shall be the governing agreement between the parties regarding the resolution of Disputes unless this Plan is not enforceable, in which case the pre-existing agreement shall govern.

Dkt. 14-2 at 5. Thus, Terminix has not reserved the unilateral right to terminate or modify the We Listen Plan, and the We Listen Plan expressly preserves claims in the event an employee is terminated.

The We Listen Plan is a separate document from the Compensation Plan, supported by its own consideration:

> I and the Company agree that the mutual obligations by the Company and me to arbitrate Disputes, my continued employment, the Company's processing and

---

[4] Terminix "reserves the right to suspend, terminate or modify all or any part of this Plan at any time. Any such changes will be communicated to affected Associates prior to effective date of the change and in accordance with law." Dkt. 14-3 at 5.

5

> evaluation of my application for employment, and the Company's agreement to pay the applicable fees for mediation and arbitration, provide adequate consideration for this Plan.

Dkt. 19-2 at ¶ 19. The court concludes that the We Listen Plan contains sufficient consideration in the form of non-illusory mutual promises to arbitrate, plaintiff's continued employment, and Defendant's agreement to bear the costs of mediation.[5] *See Walker v. Ryan's Family Steak Houses, Inc.*, 289 F. Supp. 2d 916, 929 (M.D. Tenn. 2003) ("mutual promises to be bound under an arbitration agreement can constitute adequate consideration"); *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 680 (6th Cir. 2003) (even where cost-splitting provision was unenforceable because it would unfairly burden the employee, the rest of the arbitration provision was enforceable). Cooper has not met his burden to show that the arbitration agreement is invalid because it is illusory.

### ii. The agreement does not infringe substantive rights.

In *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 315-16 (6th Cir. 2000), the Sixth Circuit found an arbitration agreement unenforceable under Tennessee law where the promise to provide an arbitral forum was indefinite, the selection of a forum and an arbitrator were left to the unfettered discretion of a biased arbitration company, and the arbitration services provider was able to unilaterally change the governing rule and procedures. None of the concerns in *Floss* are implicated by the We Listen Plan. The agreement in *Floss* was between the employee and a third-party arbitration services provider, not the employer. Also, the rules and procedures under the We Listen Plan are not subject to unilateral change and there is provision for the selection of an unbiased arbitrator. Dkt. 19-2 at ¶ 14 (the dispute is to be arbitrated

---

[5] In addition, Tennessee courts have held in other contexts that continued employment is sufficient consideration to support a contract with an at-will employee. *Hensley v. Cocke Farmer's Coop.*, No. E201401775COAR3CV, 2015 WL 5121142, at *5 (Tenn. Ct. App. Aug. 31, 2015) (enforcing severance pay agreement) (citing *Cummings Inc. v. Dorgan*, 320 S.W.3d 316, 336 (Tenn.Ct.App.2009) (regarding a non–compete agreement)).

6

pursuant to American Arbitration Association procedures, and "the arbitrator shall be a member of the Bar of the state in which the arbitration is heard, if available. Otherwise, the arbitrator shall be a retired judge from the jurisdiction"). Further, the We Listen Plan protects employee rights by providing that the filing of a claim in court will constitute a request to initiate the Plan; that the statute of limitations on an employee's claims is tolled upon initiation and during the process; and that the company will pay all fees and costs of arbitration. Dkt. 19-2 at ¶¶ 5, 6, 11.

Cooper cites no authority for the proposition that the We Listen Plan is unconscionable or a contract of adhesion. A contract of adhesion is "a standardized contract form offered to consumers of goods and services on essentially a 'take it or leave it' basis, without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or service except by acquiescing to the form of the contract." *Howell v. Rivergate Toyota, Inc.*, 144 Fed. App'x 475, 478 (6th Cir. 2005). A contract is not adhesive merely because it is a standardized form offered on a take it or leave it basis—in the employment context "an arbitration agreement is not a contract of adhesion unless the employee would be unable to find a suitable job if he refused to agree to arbitrate." *Id.* Moreover, not all adhesion contracts are unenforceable—"[e]nforceability generally depends upon whether the terms of the contract are beyond the reasonable expectations of an ordinary person, or oppressive, or unconscionable." *Id.* at 478-79. Given the protections discussed above, this is not the case with the agreement at issue here.

The Fifth Circuit rejected claims that the arbitration of FLSA claims infringes substantive rights in *Carter v. Countrywide Credit Indus.*, 362 F.3d 294, 298-99 (5th Cir. 2004) (finding that the waiver of the right to select a forum, to proceed collectively, and to engage in full discovery do not impact substantive rights). The *Carter* court also rejected the argument that the failure of

7

the agreement at issue to explicitly mandate that the arbitrator must award attorney's fees invalidated the agreement. *Id.* at 299. As in *Carter*, an award of attorney's fees in this FLSA case is mandated by statute. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). The arbitration agreement does not give the arbitrator discretion to ignore the law. The provision cited by Cooper (Dkt. 19-2 at ¶ 15(a)) merely authorizes the arbitrator to award any remedy that would be available to a party in a court of law. As Terminix puts it:

> This language does not vest the arbitrator with the *discretion* to decide what damage provisions of the FLSA he or she will apply in the event Cooper is successful. Rather, this provision provides that any remedies awarded will be awarded in accordance to the damages available in a court of law for the dispute presented, thus **guaranteeing Cooper entitlement to such damages**.

Dkt. 19 at 7 (italics in original; bold added). Cooper has not shown that the arbitration agreement is invalid because it infringes substantive rights.

### b. Scope of the arbitration agreement.

The arbitration agreement covers all disputes that "arise out of or are related to [Cooper's] application for employment, [ ]employment, the termination of []employment, or reemployment," including but not limited to Fair Labor Standards Act claims. Dkt. 19-2 at ¶ 3. Cooper's FLSA claims in this case fall squarely within the scope of the arbitration provision. Cooper does not argue to the contrary.

### 2. No federal statute or policy prohibits arbitration

After determining that the parties have agreed to arbitrate a dispute, the court must determine whether any federal statute or policy prohibits arbitration. *OPE Int'l LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445 (5th Cir. 2001). The Supreme Court has clearly held that arbitration of federal statutory claims is not prohibited because "by agreeing to arbitrate

8

a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than judicial forum." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). While not all statutory claims may be appropriate for arbitration, "having made the bargain to arbitrate, the party should be held to it unless Congress itself had evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Id.* There is nothing in the FLSA that explicitly or implicitly precludes arbitration. *Carter*, 362 F.3d at 297. Thus, an agreement to arbitrate FLSA claims is permitted as long as the agreement "allow[s] for the effective vindication of the claim." *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 315-16 (6th Cir. 2000). Cooper has not shown any reason why the arbitration agreement in the We Listen Plan does not provide for effective vindication of his FLSA claims.

### 3. Dismissal of Cooper's claims

Defendant has submitted to the court a signed copy of the We Listen Plan that contains an arbitration provision. Cooper has not met his burden to invalidate the agreement. Therefore, Cooper's claims should be submitted to arbitration and his claims in this case should be dismissed. *Alford*, 975 F.3d at 1164.

## B. Defendant's Motion to Dismiss consenting individuals' claims[6]

### 1. Consenting individuals are not parties

Although notice to potential class members has not been issued, nine pest control technicians have filed consent forms to opt-in to the collective action in this case as plaintiffs. Dkts. 4-11, 26. Cooper argues that the individuals who have opted-in by filing written consents

---

[6] The court does not construe defendants' pleadings as seeking to compel arbitration against the opt-in plaintiffs at this time. *See* Reply, Dkt. 19 at 2 ("the arbitration agreements of any other employee or former employee are not at issue"). Terminix has not submitted to the court an arbitration agreement signed by any individual who has filed a consent form.

9

with the court are parties to this action, citing 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). However, while section 216(b) makes it clear that in order to be a party an individual must file a written consent, it does not state that an individual who files a consent is necessarily a party.

In *Beery v. Quest Diagnostics, Inc.*, Civil Action No. 12-CV-00231, 2013 WL 3441792, at *1 (D.N.J. July 8, 2013), the district court dismissed all claims of the named plaintiffs in an Equal Pay Act case in favor of arbitration. Some individuals had filed consent-to-join forms at the time of the dismissal, but the court had not granted conditional certification and court-approved notice had not been sent to employees. *Id.* The district court declined to simply substitute the individuals who filed opt-in consent forms as named plaintiffs because there had been no finding at that point that they were similarly situated to the named plaintiffs. *Id.* at 3. The district court concluded: "[t]he four individuals who filed consents-to-join without conditional certification or court ordered notice are not party-plaintiffs in this case." *Id.* Thus, the court dismissed the case in its entirety. Terminix cites *Crawford & Saks & Co.*, Civil Action No. H-14-3665, 2016 WL 3090781, at *9-10 (S.D. Tex. June 2, 2016) for the same proposition. *Crawford* holds that dismissal of a case is appropriate after entry of summary judgment against all named plaintiffs prior to conditional certification. *Crawford* relied on *Beery's* reasoning that "Those who filed consent-to-join forms were not parties, much less representative parties, until [conditional certification and court-ordered notice] occurred."[7] *Id.* at 10

The court has not granted conditional certification of a collective action in this case. The only named plaintiff is Cooper. While other individuals have filed form consent forms to opt-in

---

[7] As Cooper points out, it does not appear that any additional individuals had filed consent to join forms in that case.

10

to a collective action, there is not currently any collective action to join. The court agrees with the court in *Beery* that those who filed consent-to-join forms are not yet parties to this case.

### 2. Claims of consenting individuals must be dismissed.

In *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 73 (2013), the Supreme Court held "in the absence of any claimant's opting-in, respondent's suit became moot when her individual claim became moot . . . the mere presence of collective action allegations in the complaint cannot save the suit . . .." Therefore, having recommended dismissal of the claims of the only named plaintiff in this case, the court also recommends dismissal of all claims of individuals who have filed consent forms. In addition, Cooper filed this suit asserting the right to pursue a collective action in violation of the We Listen Plan, in which he expressly waived such a right. Dkt. 19-2 at ¶ 10.

### 3. Dismissal without prejudice and tolling statute of limitations

Terminix recognizes, Dkt. 21 at 3, dismissal of this action will be without prejudice to the filing of new actions by the consenting individuals. Terminix also contends that the consenting plaintiffs will not be prejudiced by this dismissal. This is not entirely true. The court is cognizant of equitable concerns regarding the running of the statute of limitations on the consenting individuals' claims. Such individuals presumably filed their consents in reliance on the fact that doing so would toll their limitations period. *See Shidler v. Alarm Sec. Group, LLC,* 919 F. Supp. 2d 827, 829-30 (S.D. Tex. 2012). The court has discretion to equitably toll the FLSA statute of limitations in such circumstances. *Id.* Therefore, the court also recommends that the statute of limitations for the consenting individuals be tolled from the date of filing the consent until 60 days after the court adopts the recommendations in this memorandum and recommendation.

## IV. Conclusion and Recommendation

For the reasons stated above, the court recommends that the Motion to Dismiss and to Compel Arbitration (Dkt. 14) be **GRANTED** as to plaintiff Cooper.

The court further recommends that as to the consenting individuals (Dkts. 4-11, 26) the Motion to Dismiss be **GRANTED WITHOUT PREJUDICE** to the filing of separate actions.

It is further recommended that the statute of limitations for consenting individuals is **TOLLED** from the date of filing the consent until 60 days after the court adopts this memorandum and recommendation.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c). Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208; copies of any such objections shall be delivered to the chambers of Judge Vanessa D. Gilmore, Room 9513, and to the chambers of the undersigned, Room 8608.

Signed at Houston, Texas, on April 11th, 2018.

Christina A. Bryan
United States Magistrate Judge